IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOHN CALEB ROSS                                                                                     PLAINTIFF
ADC # 156069

v.                                         4:25CV00428-BSM-JTK

ANTONIO D. JOHNSON, JR., et al.                                                               DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller.  Any party may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I.      Introduction**

John Caleb Ross ("Plaintiff") is in custody at the Tucker Unit of the Arkansas Division of Correction ("ADC").  He filed a pro se civil action under 42 U.S.C. § 1983, as well as a Motion to Proceed In Forma Pauperis, which was granted.  (Doc. Nos. 1-3).  The Court screened Plaintiff's Complaint pursuant to the Prison Litigation Reform Act ("PLRA") and asked Plaintiff for additional factual details about his claims.  (Doc. No. 4).  Plaintiff was given the opportunity to file an Amended Complaint to cure the deficiencies in his pleading.  (Id.).  Plaintiff has filed his Amended Complaint.  (Doc. No. 6).  The Court will now continue screening his claims.

**II.     Screening**

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). See also 28 U.S.C. § 1915(e) (screening requirements).

An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Whether a plaintiff is represented by counsel or is appearing pro se, his complaint must allege specific facts sufficient to state a claim. See Martin v. Sargent, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32 (1992).

**III.    Discussion**

    **A.     Plaintiff's Amended Complaint**

Plaintiff's Amended Complaint is the operative pleading in this case. (Doc. No. 6). In his Amended Complaint, Plaintiff sued Tucker Unit Deputy Warden Antonio D. Johnson, Jr., East Arkansas Regional Unit Warden Kenyon Randle, Captain Etherly, and ADC Director Dexter Payne (collectively, "Defendants") in their personal and official capacities under 42 U.S.C. § 1983.

(Doc. No. 6 at 1-2). Plaintiff's alleges Defendants have failed to protect him from an Aryan group that put a hit out on him. He also brings conditions of confinement claims.

The history of the friction between Plaintiff and the Aryan group dates back to March 2021 when Plaintiff was threatened by a Tyler Standridge. (Id. at 4). When Plaintiff was later placed in custody at the Dallas County, Arkansas, Detention Center, another inmate asked Plaintiff if he knew Tyler Standridge. (Id.). The other inmate was a member of W.A.R., an Aryan gang. (Id.). Plaintiff overheard the other inmate tell someone that Plaintiff has "a battery charge against one of their bro's kids." (Id. at 5). Plaintiff also overhead the other inmate say that "they have money on [Plaintiff's] head." (Id.). Plaintiff told the guards what he had heard and was transferred to the Hot Spring County Jail, and then to the Pine Bluff Unit of the ADC where he remained problem free until May 2022. (Doc. No. 6 at 5).

In May 2022, Plaintiff was transferred to the Barbara Ester Unit of the ADC. (Id.). One day in December 2022, Plaintiff recognized his victim's father as an inmate housed in the same building as Plaintiff. (Id.). Plaintiff says that same day he noticed a group of Aryans sharpening objects on the ground. (Id.). Plaintiff alerted staff to the issue and was moved to another building. (Id.). Plaintiff says that while he was laying down he heard other inmates saying that the Aryans would kill Plaintiff for what he had done. (Id. at 6). Plaintiff spoke to a captain about this problem and claims the captain told Plaintiff there was nothing that could be done if Plaintiff had not been in an altercation. (Doc. No. 6 at 6). But within a couple of days Plaintiff was transferred to the East Arkansas Regional Unit ("EARU"). (Id.).

After only a few hours at the EARU, another inmate told Plaintiff that the Aryans were planning to stab Plaintiff. (Id.). After the lights were turned off in the barracks, Plaintiff "noticed

3

two Aryans go under their racks and get something [that Plaintiff] knew was a weapon." (Id.). Plaintiff told staff and was taken to the infirmary. (Id.).

On January 7, 2023, Plaintiff was placed in restraints and placed in a bull pen in Max/Isolation at the EARU. (Id.). Defendant Etherly kept Plaintiff in the bull pen, a space large enough only to sit down, for two days. (Doc. No. 6 at 6, 10). During that time, Plaintiff had to urinate on the ground and sleep in the same area. (Id. at 6).

On January 9, 2023, Plaintiff was placed in a cell. (Id. at 7). In February 2023, Plaintiff complained to Defendant Payne about his situation. (Id.).

On or around March 23, 2023, Plaintiff was transferred to the Grimes Unit where he refused population and was asked to write his first witness statement. (Id.). Plaintiff was placed in a cell in isolation. (Id.). Plaintiff wrote to Defendant Payne requesting that he be placed in protective custody. (Doc. No. 6 at 7). Shortly after that, a Captain Baker asked Plaintiff for the name of Plaintiff's victim's father. (Id.). Plaintiff could provide only the name of his victim. (Id.). Not long after this Plaintiff was transferred to the Tucker Unit where he is currently incarcerated. (Id.).

When Plaintiff arrived at the Tucker Unit, he refused to go to population. (Id.). Plaintiff then wrote his second witness statement explaining that he could not do so because his victim's father is N.A.E., an Aryan group, and N.A.E. has a hit out on Plaintiff. (Id.). Plaintiff was taken to isolation. (Doc. No. 6 at 7-8). In June, 2023, Plaintiff received 48-hour relief and called home. (Id. at 8). During the call Plaintiff's father told him that Defendant Payne explained Plaintiff was not receiving help with his situation because Plaintiff had told two different stories about his circumstances. (Id.). Plaintiff maintains that is not correct. (Id.).

4

Plaintiff then wrote Defendant Payne and internal affairs. (Id.). Defendant Johnson called Plaintiff to his office, where the two were joined by Defendant Randle. (Id.). Defendant Johnson laughed at Plaintiff's letter and asked Plaintiff to write a witness statement. (Doc. No. 6 at 8). Plaintiff did so, and Defendant Randle asked Defendant Johnson if Plaintiff's victim's are in EOMIS. (Id.). Defendant Johnson responded in the affirmative. (Id.). Plaintiff believes Defendants Randle and Johnson "knew who [Plaintiff's] victim's father was because [Plaintiff] know[s] his ex and his kid are on his phone and visitation list." (Id.). But Plaintiff could identify his victim's father only as "David." (Id. at 9). Defendants Randle and Johnson explained to Plaintiff that his victim's father could not be placed on Plaintiff's enemy alert list because there was not sufficient information to identify him. (Id.).

Sometime in the period of September to December, 2023, Tyler Standridge, who is also N.A.E., went to Isolation and told Plaintiff that he could not hide forever because Standridge "and his bros" were waiting for Plaintiff. (Doc. No. 6 at 9).

Plaintiff says that between February 2023 and December 2023, he wrote Defendant Payne at least 5 times asking for help. (Id.). Plaintiff complains that Defendant Payne only forwarded Plaintiff's letter to the warden, but never came and spoke to Plaintiff and never conducted a real investigation. (Id.).

Sometime between October 2024 and December 2024, Plaintiff refused an "afflicted person" as his cellmate and as a result Defendant Johnson placed Plaintiff on behavior control where "they" took Plaintiff's sleeping bag and forced Plaintiff to sleep in nothing but boxers on a concrete slab without a blanket. (Id. at 9-10).

Plaintiff explains that he is "currently housed in restricted housing and it's the only place [he is] safe and feel[s] safe." (Id. at 11). He says the guards there understand his situation and

5

"act like they care so they have allowed [Plaintiff] to stay in a cell with an individual [Plaintiff] know[s] and [who] is not a threat." (Id.). Regardless, Plaintiff is still "getting wrote up for not going to population." (Doc. No. 6 at 11).

Plaintiff seeks damages and asks to be placed in a one-man cell in protective custody, have his restrictions lifted, and have his class restored. (Id. at 12).

### B.     Official Capacity Claims

Plaintiff sued Defendants in their official capacities seeking damages, among other relief. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, Plaintiff's official capacity damages claims against Defendants are the equivalent of claims against the state of Arkansas and are barred by Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

The Eleventh Amendment does not bar prospective injunctive relief. Pursuant to Ex Parte Young, an individual may sue a state official in his or her official capacity for prospective injunctive relief to remedy ongoing violations of federal law. Ex Parte Young, 209 U.S. 123, 149-50 (1908). But to establish liability in an official capacity suit under § 1983, a plaintiff must demonstrate that a defendant took action pursuant to an unconstitutional policy or custom. Hood v. Norris, 189 F. App'x 580 (8th Cir. 2006) (citation omitted). Because Plaintiff has not alleged that a policy or custom was the driving force behind the alleged violations of his rights, Plaintiff's official capacity claims for injunctive relief also fail.

### C.     Personal Capacity Claims

Plaintiff brought suit under 42 U.S.C. § 1983. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909

F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Bare allegations void of factual enhancement are insufficient to state a claim for relief under § 1983. See Iqbal, 556 U.S. at 678.

### 1.     Qualified Immunity

Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 2.     Conditions of Confinement Claims

Plaintiff complains that on January 7, 2023, Defendant Etherly placed Plaintiff in the bull pen in the EARU. The bull pen was only large enough for Plaintiff to sit. Plaintiff had to urinate and sleep in the bull pen. He remained in the bull pen under those conditions for two days. (Doc. No. 6 at 6, 10).

"Any analysis of confinement conditions must be based on the totality of the circumstances." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989). In some situations, exposure to raw sewage may constitute a violation of an inmate's Eight Amendment rights. Smith v. Copeland, 87 F.3d 265, 268-69 (8th Cir. 1996). The length of time an inmate remains in "harsh conditions is a critical factor" when considering if a constitutional violation occurred. Id. at 269. For example, the United States Court of Appeals for the Eighth Circuit found no violation under

the Due Process Clause or Eighth Amendment where a pretrial detainee was housed in an isolation cell with an overflowing toilet for a period of four days. Id.

Here, Defendant Etherly placed Plaintiff in the bull pen where he remained for two days. Plaintiff explained in his Amended Complaint that he told Defendant Etherly about his problem with the Aryans and asked Defendant Etherly not to place him in a cell with Aryans. (Doc. No. 6 at 6). According to Plaintiff, Defendant Etherly "told [Plaintiff] he's got [Plaintiff] that he has been doing his job long enough." (Id.). Considering Plaintiff's concern for his safety, Defendant Etherly's response that he's "got Plaintiff," and the brief period Plaintiff remained in the bull pen, Defendant Etherly would be entitled to qualified immunity on Plaintiff's claim.

Plaintiff also complains after Defendant Johnson placed Plaintiff on behavior control, "they" took his sleeping bag and forced him to sleep on a concrete slab while he was wearing only boxers. (Doc. No. 6 at 9-10). As explained above, liability under 42 U.S.C. § 1983 is based on an individual's actions. Because Plaintiff made these allegations against a group of people – "they" – it is unclear who the purported wrongdoers are. Further, Plaintiff did not plead facts sufficient enough to suggest a constitutional violation. For example, he did not explain how long he was on behavior control or any other additional factors indicative of deliberate indifference by Defendant Johnson. As such, these allegations fail to state a claim on which relief may be granted.

### 3. Failure to Protect

The Eighth Amendment protects inmates against the infliction of cruel and unusual punishments which in turn obligates prison officials to take reasonable steps to protect inmates from violence by other inmates. U.S. Const. amend. VIII; Farmer v. Brennan, 511 U.S. 825, 832–33, 114 S.Ct. 1970 (1994). To establish failure to protect, a plaintiff must show that there was a substantial risk of harm to him, and that prison officials were deliberately indifferent to that

substantial risk. Axelson v. Watson, 999 F.3d 541, 546 (8th Cir. 2021). "[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Prater v. Dahm, 89 F.3d 538, 541 (8th Cir.1996). And an inmate's "general fear for his safety" does not necessarily establish that a defendant "acted with deliberate indifference by not placing him in protective custody." Johnson v. Kelley, No. 519CV00242BRWJJV, 2021 WL 800843, at *4 (E.D. Ark. Feb. 9, 2021) (citation omitted), report and recommendation adopted, No. 519CV00242BRWJJV, 2021 WL 797108 (E.D. Ark. Mar. 2, 2021), aff'd, 855 F. App'x 313 (8th Cir. 2021). But an inmate "does not have to await the consummation of threatened injury to obtain preventive relief.'" Farmer, 511 U.S. at 845.

Plaintiff alleges Defendants failed to sufficiently protect him from the threat to his life. The Court finds that the allegations in Plaintiff's Amended Complaint fail to state a failure to protect claim on which relief may be granted. After Plaintiff first complained about the victim's father being in the Ester Unit with Plaintiff, Plaintiff was transferred to the East Arkansas Regional Unit, then the Grimes Unit, and then the Tucker Unit. Each time Plaintiff complained, he was transferred. At the Tucker Unit, Defendants Johnson and Randle asked Plaintiff for the name of Plaintiff's victim's father. Plaintiff was able to recall only the first name "David." Defendants Johnson and Randle said the first name only was insufficient to determine who should be placed on Plaintiff's enemy alert list.

Plaintiff says he is "being treated wrong and punished for seeking help." (Doc. No. 6 at 10). The Court notes, however, that Plaintiff acknowledges that he refused instruction to go to population and refused to have a cellmate. As a result, Plaintiff received over 50 disciplinaries and was placed in Isolation. Plaintiff did not identify who wrote the disciplinaries. The Court is not aware of clearly established precedent finding a violation of protected rights under these

10

circumstances. Consequently, Defendants are entitled to qualified immunity on this point. Further, Plaintiff was placed in Isolation. Plaintiff's placement in Isolation protected his safety. Plaintiff is now in restrictive housing, "the only place [he is] safe and feels safe." (Doc. No. 6 at 11).

### 4. Due Process

As to the relief sought, Plaintiff asks to have his class restored and restrictions lifted. (Id. at 12). Plaintiff has no protected liberty interest in his class. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (class level). Further, placement in punitive isolation with loss of commissary, visitation, and telephone privileges generally is not an atypical and significant hardship. Kennedy v. Blankenship, 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996). Plaintiff does not make allegations of fact regarding the restrictions placed on him. As currently pled, Plaintiff's Amended Complaint does not state a due process claim on which relief may be granted.

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that

1. This action be DISMISSED without prejudice for failure to state a claim on which relief may be granted.

2. The Court recommend[2] that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g).[3]

---

[2] The number of strikes a plaintiff has accrued may be determined only by looking backwards to past dismissals; 28 U.S.C. § 1915(g) leaves the effective decision to the later tribunal. Gonzalez v. United States, 23 F. 4th 788, 789-91 (8th Cir. 2022).

[3] Title 28 U.S.C. § 1915(g) provides as follows: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under

3.  The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 4th day of June, 2025.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

imminent danger of serious physical injury."